Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Michael T. Mason | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 809 | **DATE** | 9/12/2002 |
| **CASE TITLE** | Lesley Stephens vs. City of Chicago et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  For the reasons stated in the attached Memorandum Opinion and Order, defendant Rudy Urian's motion for summary judgment [201-1] is granted in part and denied in part. The Court having taken plaintiff's arguments under consideration in deciding the motion for summary judgment, plaintiff's motion to admit or strike certain unsupported denials by defendant Urian in response to plaintiff's revised Local Rule 56.1 statement of undisputed facts [247-1] is denied as moot. Status hearing set for 10/2/02 at 9:00 a.m. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 7 number of notices | **Document Number** |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | SEP 13 2002 date docketed | 254 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | 9/12/2002 date mailed notice | |
| | Copy to judge/magistrate judge. | | | |
| FK courtroom deputy's initials | | Date/time received in central Clerk's Office | KF mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LESLEY STEPHENS,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF CHICAGO, a municipal corporation; RICK J. SANTELLA; RUDY URIAN; EILEEN JOYCE; and ADRIENNE KANE,<br><br>Defendants. | No. 98 C 809<br><br>Mag. Judge Michael T. Mason |

## MEMORANDUM OPINION AND ORDER

DOCKETED
SEP 1 3 2002

Michael T. Mason, United States Magistrate Judge:

This opinion is linked to our decision of September 5, 2002 granting in part and denying in part a motion for summary judgment brought by defendants City of Chicago (the "City"), Rick Santella, Eileen Joyce and Adrienne Kane in response to the complaint of discrimination brought by plaintiff Lesley Stephens.[1] Individual defendant Rudy Urian filed a separate motion for summary judgment, which we address here. Because Stephens filed only a single Rule 56.1 statement of undisputed facts for both motions, and because Urian's own Rule 56.1 statement is brief, we adopt the statement of facts set forth in our previous opinion, with the following additions specific to Urian.

As stated in our previous opinion, Stephens returned to work for the City's department of Fleet Management ("Fleet") from a five-year duty disability leave in October,

---

[1] Specifically, we granted summary judgment in its entirety to Joyce and Kane and granted in part and denied in part summary judgment for the City and R. Santella.

1993, in the position of Accident Adjuster.  In June, 1994, Urian was promoted to the position of Deputy Commissioner of Fleet, a job he held at the time this lawsuit was filed. As an accident adjuster, Stephens reported indirectly to Urian.  In 1995, Stephens met with Urian to discuss Stephens' desire for a promotion.[2]  In the summer of 1995, after Stephens sent a letter to Mayor Daley regarding the Fleet promotional process, Urian recommended that Stephens be disciplined.  At the time, Urian did not know if Stephens had violated any rules by writing the Mayor.  One year later, Urian recommended that Stephens receive a second suspension, this one for refusing to complete an assignment involving salt spreaders.

Stephens never heard Urian make any offensive comments or racial slurs. Stephens' co-worker, Ruth Figureroa, testified that she heard Urian make such comments on several occasions.  Some of Urian's alleged comments were derogatory to African-Americans in general, and several mentioned Stephens specifically. Most notably, Figueroa testified that while Stephens was serving his four month administrative suspension from August, 1996 until January, 1997, Urian swore that Stephens would not come back to Fleet, using the expression, "f*#k the nigger."[3]  Urian denies making any such statements.

Urian never served on any panel that interviewed Stephens for a promotion. He did serve on two panels that interviewed for jobs for which Stephens applied but was not

---

[2] Stephens argues that Urian told him in 1994 that he could increase his chances for promotion by contacting his alderman. However, the only proof Stephens has is his own testimony, which is hearsay if used to prove that political connections could get him a promotion. Further, even if we accepted this fact as true, at most, it shows that contacting an alderman might possibly help in the promotion process, it does not prove that political affiliation actually influenced any of the promotions Stephens sought.

[3] Defendants objected to these statements on the ground that they were hearsay. However, they are not being used for the truth of the matter asserted, only as a representation of Urian's alleged racial bias.

2

interviewed, Manager of Vehicle Maintenance and Manager of Vehicle Adjustments. Urian was not responsible for choosing who appeared on the interview list, however.

**Legal Analysis**

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). We must evaluate the admissible evidence supporting the motion in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). "Rule 56(c) mandates summary judgment when the nonmoving party fails to establish the existence of an element essential to its case and on which that party will bear the burden of proof at trial." *Jefferson v. City of Chicago*, No. 97 C 4895, 2000 WL 1368036 (N.D.Ill., Sept. 15, 2000) (citing *Anderson*, 477 U.S. at 252).

The standard for summary judgment cases is applied with added rigor in employment discrimination situations, where intent is usually central to the issues at hand. *See McCoy v. WGN Continental Broadcasting Co.*, 957 F.2d 368, 370-371 (7th Cir. 1992). However, employment discrimination cases can also be appropriate for summary judgment when there is no genuine dispute of material fact or when there is insufficient evidence to demonstrate an alleged motivation to discriminate. *Cliff v. Board of School Commrs.*, 42 F.3d 403, 409 (7th Cir. 1994).

In this case, the only possibly material disputed fact concerns whether or not Urian ever used racial slurs to describe either African-Americans in general or Stephens in particular. As we explain below, this dispute of fact is material to the question of Urian's

3

intent in recommending that Stephens receive a suspension in 1995 for writing Mayor Daley to complain of discrimination.

Stephens has sued Urian in his individual capacity for violations of 42 U.S.C. § 1981 and § 1983. In addition to his arguments in support of his motion for summary judgment, Urian also alleges that certain of Stephens' claims are either time barred or otherwise improper. We will address each argument in turn.

### A. Statute of Limitations

Urian claims that Stephens should not be able to recover for being denied promotions to the Deputy Commissioner position filled by Greb and the Director of Operations position filled by Urian in June, 1994 or the Manager of Vehicle Adjustments position filled by G. Santella in May, 1995 because they are barred by the statutes of limitations for both §§ 1981 and 1983 claims. Section 1981 and 1983 claims must be brought within two years of the alleged discrimination. *Smith v. City of Chicago Heights*, 951 F.2d 834, 836 n.1 (7th Cir. 1992). Thus, any alleged discriminatory actions which occurred prior to February 9, 1996 are time barred unless Stephens can demonstrate that it is appropriate to toll the limitations period.

Stephens argues that we should include the untimely promotion denials under the continuing violation theory, which allows a plaintiff to seek relief for allegedly discriminatory acts that occurred outside the limitations period by linking them to acts within the period. *Selan v. Kiley*, 969 F.2d 560, 564 (7th Cir. 1992). In the employment discrimination context, the plaintiff must demonstrate that "there has been a pattern or policy of discrimination continuing from outside the limitations period into the statutory limitations period, so that all discriminatory acts committed as part of this pattern or policy can be considered. . .

4

timely." *Hardin v. S.C. Johnson & Son, Inc.*, 167 F.3d 340, 344 (7th Cir. 1999) (citing Peatzold & O'Leary, *Continuing Violations and Hostile Environment Sexual Harassment: When is Enough, Enough?* 31 AmBus.L.J. 365 (1994)).

In determining whether to apply the continuing violation doctrine, the Seventh Circuit considers three factors: 1) whether the alleged acts of discrimination involve the same subject matter; 2) the frequency at which they occurred; and 3) their degree of permanence, which should trigger an employee's awareness of and duty to assert his or her rights. *Selan*, 969 F.2d at 565.

In this case, it is undisputed that Stephens began questioning Fleet's promotional policies in late 1994, and specifically began mentioning race as a factor in those policies in 1995. He filed his first charge of discrimination with the EEOC in December, 1995, about nine months after he did not receive the position of Manager of Vehicle Adjustments that was given to G. Santella. Given these facts, we do find that Stephens' §§ 1981 and 1983 claims are time-barred. The continuing violation doctrine only applies until such point in time when a plaintiff knows or should reasonably know that he or she might be suffering from discrimination. In this case, Stephens was aware of his claims against the City at the latest when he filed his first charge of discrimination in December, 1995, yet he did not file his lawsuit until two years and two months later, over three and one-half years after the first two promotion denials. We find it is not reasonable to allow Stephens to toll his §§ 1981 an 1983 claims to a date outside the two-year statute of limitations, since he was aware of the promotion denials before then and we will bar him from recovering for the promotions given to Greb and Urian in 1994 and G. Santella in May, 1995.

## B. Section 1981 and 1983 Race Discrimination Claims

Stephens argues that Urian discriminated against him because of his race in violation of his constitutional rights under §§ 1981 and 1983. Proof of intentional discrimination against a defendant in his or her individual capacity requires the same standard for § 1981 and § 1983, so we will analyze these claims together. *See, Friedel v. City of Madison*, 832 F.2d 965, 971 (7th Cir. 1987). Section 1983 provides a federal cause of action for "the deprivation under color of law, of a citizen's rights, privileges, or immunities secured by the Constitution and laws of the United States." *Gossmeyer v. McDonala*, 128 F.3d 481, 489 (7th Cir. 1997) (*citing Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994)). To prevail on his § 1983 claim against Urian in his individual capacity, Stephens must show that Urian was directly responsible for the actions that allegedly deprived him of his Constitutional rights, in this case, his rights to Equal Protection under the Fourteenth Amendment. *See Moore v. State of Indiana*, 999 F.2d 1125, 1129 (7th Cir. 1993). An individual is directly responsible for a Constitutional violation "if the conduct . . . occurs at [his] direction or with [his] knowledge or consent." *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) (*citing Smith v. Rowe*, 761 F.2d 360, 369 (7th Cir. 1989). "In other words, the defendant must 'know about the conduct, facilitate it, condone it, or turn a blind eye. . .'" *Gentry*, 65 F.3d at 561 (*citing Jones v. City of Chicago*, 856 F.2d, 985, 992 (7th Cir. 1988).

Finally, to support a claim under § 1983, a plaintiff also must show that the individual defendant acted (or failed to act) because of the plaintiff's race. *See Nabozny v. Podlesny*, 92 F.3d 446, 453 (7th Cir. 1996). The plaintiff must demonstrate intentional or purposeful discrimination to show an equal protection violation. "Discriminatory purpose, however,

6

implies more than intent as volition or intent as awareness of consequences. It implies that a decision maker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing adverse effects on the identifiable group." *Deerwester v. Isham*, No. 94 C 1186, 1999 WL 160255 (N.D.Ill., March 9, 1999) (*citing Nabozny*, 92 F.3d at 453 (internal citations omitted)).

Stephens' claims against Urian are somewhat vague. He alleges that Urian ignored his and others' race discrimination complaints for years, was intimately involved in Stephens' 1995 suspension for writing the Mayor as well as his suspension for refusing to complete the salt spreader assignment. Finally, Stephens alleges that Urian was responsible for Stephens' failure to receive promotions to the Manager of Vehicle Maintenance, Manager of Vehicle Adjustments, and Director of Maintenance Operations positions.

In our other opinion, we partially denied the City's motion for summary judgment as to Stephens' Title VII and § 1981 claims against it because we found questions of fact regarding whether the City had discriminated against Stephens. In this case, we grant Urian's motion for summary judgment as to all but the 1995 suspension because Stephens has not provided evidence that Urian had discriminatory intent. Unlike the situation in *Donald v. City of Chicago*, No. 90 C 2360, 1992 WL 137190 (N.D.Ill., June 1, 1992), cited by the plaintiff (a case that is not binding on us in any event), the evidence does not demonstrate that Urian ignored Stephens complaints when he had the opportunity to take specific action. In *Donald*, the plaintiff had been subjected to three instances of harassment by a particular co-worker, and had requested that her supervisors move her to a different work-crew. Although the instances of harassment were severe (including a situation in

7

which the co-worker cut down a tree so that it fell on the plaintiff and her car), her supervisors failed to take any action. The Court found a question of fact about whether the City had an informal policy of ignoring complaints of harassment, and also that there was a question of whether the plaintiff's supervisors had exercised enough authority to act on her behalf, but chose not to.

In contrast, the evidence shows that Urian met with Stephens on several occasions to discuss Stephens' general complaints about discrimination. Although Stephens was never satisfied with the outcome of any of these meetings with Urian or others at Fleet, his dissatisfaction is not enough to show that Urian "had the opportunity to take responsive action" to specifically identified examples of misconduct, and failed to do so. *Donald*, 1992 WL 137190 at *3. Although Stephens contends that Urian failed to address the problem of graffiti at Fleet, the evidence shows that it was always removed within days of discovery and no evidence supports an allegation that Urian ignored it.

Similarly, Stephens produces no evidence that Urian was at all involved in the promotion process, and thus we grant summary judgment on this issue as well. Urian did not sit on any of the interview panels, and there is not any evidence that he helped the Fleet personnel liaisons or the DOP choose whom to place on interview lists or decide whom to hire. None of his alleged actions with regard to the above issues, even if true, rise to the level of involvement necessary to maintain an individual § 1983 action.

The one issue for which we deny summary judgment concerns the 1995 suspension for writing Mayor Daley to question Fleet's promotion practices. Especially given the dispute regarding Urian's use of racial slurs to describe Stephens, we find there is a question of fact about Urian's involvement and motivation for recommending the suspension, which the

8

parties admit was issued even though Stephens violated no City policy or rule. Thus, we deny summary judgment on this issue.

2. Patronage Practices – § 1983

Finally, we grant summary judgment to Urian on Stephens' § 1983 claim of patronage practices for the same reasons we granted summary judgment to the City. Even assuming, arguendo, that Urian was responsible for any of the promotion decisions, there is no evidence that political affiliation, or lack thereof, played a role in any promotion or promotion denial.

III. Conclusion

For the reasons stated above, we grant summary judgment to Urian on all of Stephens' claims against him except for the §§ 1981 and 1983 claims regarding the issuance of the 1995 suspension. It is so ordered.

ENTER:

MICHAEL T. MASON
United States Magistrate Judge

Dated: September 12, 2002

9