Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Michael T. Mason | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 809 | **DATE** | 8/20/2003 |
| **CASE TITLE** | Stephens vs. City of Chicago et al. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due ___ ___.

(3) ☐ Answer brief to motion due___ ___. Reply to answer brief due___ ___.

(4) ☐ Ruling/Hearing on ___ set for ___ at ___.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on ___ set for ___ at ___.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on ___ set for ___ at ___.

(7) ☐ Trial[set for/re-set for] on ___ at ___.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to ___ at ___.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated in the attached Memorandum Opinion and Order, plaintiff's motion for reconsideration of the court's ruling granting summary judgment to defendant Urian [269-1] and plaintiff's motion for reconsideration of the court's ruling on defendant City of Chicago's motion for summary judgment [270-1] are granted in part and denied in part. Plaintiff's motion for reconsideration of the court's summary judgment [258-1] filed on 9/30/02 by plaintiff's previous counsel is moot. Status hearing set for 9/17/03 at 9:00 a.m. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | 7 number of notices | |
| | No notices required. | | |
| ✓ | Notices mailed by judge's staff. | AUG 21 2003 date docketed | |
| | Notified counsel by telephone. | | 281 |
| | Docketing to mail notices. | docketing deputy initials | |
| | Mail AO 450 form. | 8/20/2003 | |
| | Copy to judge/magistrate judge. | date mailed notice | |
| KF courtroom deputy's initials | | 03 AUG 20 PM 2:47 Date/time received in central Clerk's Office | KF mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LESLEY STEPHENS,

    Plaintiff,

v.

CITY OF CHICAGO, a municipal corporation; RICK J. SANTELLA; RUDY URIAN; EILEEN JOYCE; and ADRIENNE KANE,

    Defendants.

No. 98 C 809

Mag. Judge Michael T. Mason

## MEMORANDUM OPINION AND ORDER

Michael T. Mason, United States Magistrate Judge:

Before us are two motions filed by plaintiff Lesley Stephens asking that we reconsider two related judicial opinions granting in part and denying in part summary judgment to Stephens' employer, the City of Chicago ("City") and various individual defendants. For the following reasons we grant in part and deny in part plaintiff's motions to reconsider, but as we explain below, we decline to alter any part of our original opinions.

On September 5, 2002, we issued an order granting in part and denying in part a motion for summary judgment filed by defendants City of Chicago and individual City employees Rick Santella, Eileen Joyce, and Adrienne Kane. On September 12, 2002, we granted in part and denied in part a related motion for summary judgment filed by individual defendant Rudy Urian, who had retained counsel separate from the other defendants.[1] Stephens has now asked that we reconsider part of our decision granting the defendants'

---

[1] On October 9, 2002, we revised our opinion regarding Urian to grant summary judgment to him in full; Stephens' current motion asks us to reconsider this decision as well.



motion as to the City, specifically, our holdings, 1) that Stephens could not maintain his failure-to-promote claim with respect to promotions given to employees Urian and Greb in 1994; 2) that he had not presented adequate evidence of retaliation; and 3) that his section 1983 claim against the City was not viable. Further, Stephens asks that we reconsider our decision to grant summary judgment to Urian on Stephens' section 1981 and 1983 claims that Urian discriminated and retaliated against him on the basis of his race by denying him promotions, by failing to respond to Stephens' complaints of a racially hostile work environment, and by issuing unlawful suspensions after Stephens complained of discrimination.

**Background**

As we explained in our original opinions, the facts of this case are long and complicated, thus we will only set forth the relevant facts here; our September 5, 2002 opinion describes the facts in detail. At the time of our opinions, Stephens had been employed by the City's department of Fleet Management since 1979. From 1988 until October, 1993, he was on duty disability leave because of a back injury. When Stephens returned to work, he was hired as an Accident Adjuster, a non-supervisory position with a City pay grade of 13. Prior to his disability leave, Stephens had held the non-managerial job of Motor Truck Driver, but on occasion had served in acting capacities for jobs that did include managerial experience.

Approximately eight months after Stephens returned to work, in June, 1994, the City promoted Rudy Urian to the position of Deputy Commissioner and Ernie Greb to the position of Director of Operations; after Urian's promotion, Stephens reported indirectly to him. Because both of these positions were not subject to the so-called Shakman consent

2

decree, they could be filled without first being posted and without the City interviewing candidates for them. Neither Urian and Greb, nor Stephens, submitted applications for these jobs. Eight months later, in February, 1995, Stephens applied for the level 16 job of Manager of Vehicle Adjustments. Some time after that, G. Santella was transferred from his position as Manager of Vehicle Adjustments in the Police Department to hold the same position at Fleet.[2] In December, 1995, Stephens filed his first charge of discrimination with the EEOC, complaining about his failure to be promoted to the Manager of Vehicle Adjustments position given to G. Santella and also complaining about a suspension he received in August, 1995 as a penalty for writing the Mayor to complain about discrimination. Defendant could not identify any rule Stephens violated by writing the Mayor and the suspension was later expunged from his record.

Stephens filed his second charge with the EEOC in November, 1997, complaining of discrimination stemming from his failure to receive additional promotions for which he had applied, and also contending that the City had retaliated against him for his earlier complaints. Stephens received a right to sue letter from the EEOC on February 6, 1998 and filed his lawsuit three days later.

**Legal Standard**

Under Fed.R.Civ.P. 59(e), a party may file, within ten days of entry of judgment, a motion which asks the court to alter or amend such judgment in order to correct a manifest error of law or fact or to present newly discovered evidence. Motions to reconsider may

---

[2] Evidence submitted by the parties indicates that G. Santella may have assumed the position of Manager of Vehicle Adjustments in March, 1995. However, in both of Stephens' EEOC charges he alleges that the promotion occurred in August, 1995.

3

not simply rehash old arguments or make new arguments that could have been brought to the court's attention prior to judgment. See Moro v. Shell Oil Co., 91 F.3d 872, 876 (7th Cir. 1996). The decision of whether to grant a Rule 59(e) motion "is entrusted to the sound judgment of the district court. . .." In re Prince, 85 F.3d 314, 324 (7th Cir. 1996). In this case, plaintiff argues that several aspects of our opinion misapplied legal standards to the facts of the case. We will address each issue in turn.

### A. Promotions of Urian and Greb

In our original opinion, we provided three reasons Stephens could not maintain that part of his lawsuit which alleged that the City discriminated against him on the basis of his race when he failed to obtain promotions given to Ernie Greb and Rudy Urian in 1994. Because there is some confusion surrounding our application of the law with respect to these promotions, we will grant plaintiff's motion to reconsider. However, as we explain below, upon reconsideration, we still find that Stephens is barred from raising these claims.

#### 1. Statute of Limitations for Section 1981 and 1983 claims

Plaintiff argues that we misapplied the law of continuing violations by focusing primarily on the "plaintiff's knowledge" prong of the test set forth in Selan v. Kiley, 969 F.2d 560, 565 (7th Cir. 1992). As we previously explained, the continuing violation theory allows a plaintiff to seek relief for allegedly discriminatory acts that occurred outside the limitations period by linking them to acts within the period. Selan, 969 F.2d at 564. Selan explains that a court deciding whether a continuing violation has occurred should consider: 1) whether the alleged acts of discrimination involve the same subject matter; 2) the frequency at which they occurred; and 3) their degree of permanence, which should trigger

4

an employee's awareness of and duty to assert his or her rights." *Selan*, 969 F.2d at 565.

We found that plaintiff's complaints about the promotions of Urian and Greb were untimely because these promotions were made in June, 1994, over three and one-half years before Stephens filed his lawsuit; the statute of limitations for section 1981 and 1983 claims is two years. In our opinion, we refused to apply the continuing violation doctrine because the evidence shows that plaintiff believed as early as December, 1995 – when he filed his first charge with the EEOC – that the City was denying him promotions based on his race. Thus, at most, the plaintiff had two years from the date of his EEOC charge to file his lawsuit; he did not file for another two years, two months.[3]

The plaintiff argues, without citing to any case law, that we incorrectly relied on the "knowledge" *Selan* factor without considering whether the other two factors weighed in favor of finding a continuing violation. First, we note that the *Selan* court itself notes that the third factor may well be the most important of the three. *Id.* at 565. Moreover, even considering the other two factors, the 1994 promotions should not be considered part of a continuing violation. First, although we agree that the subject matter – failure to receive two promotions – is generally similar to Stephens' other complaints, there are several differences which are relevant both for this analysis and that of the next section, when we consider whether the promotions of Greb and Urian were fairly encompassed by Stephens' EEOC charge. Specifically, what makes these promotions different is that neither Stephens (nor Greb or Urian, for that matter), applied for the promotions. They were so-

---

[3] Plaintiff argues that it is unfair to hold him to the statute of limitations since the EEOC took such a long time to issue his right to sue letter. However, it is well settled that the filing of a charge of discrimination with the EEOC does not toll the statute of limitations under 42 U.S.C. § 1981 for related claims. *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454 (1975).

5

called "Shakman Exempt" positions, and thus could be filled without being posted and without interviews. The remaining fourteen positions about which Stephens complained were jobs for which he had submitted a formal application, thus putting the City on notice that he was interested in being considered.[4] Indeed, Stephens' own failure to include mention of these two promotions in either of the charges he filed with the EEOC demonstrates that he did not consider them similar in form to those jobs for which he applied.[5]

Additionally, we find that these two promotions were not very close in time to the remaining promotions for which Stephens actually applied. Greb and Urian were given the positions in June, 1994. It was not until eight months later, in February, 1995 that Stephens applied for the first Manager of Vehicle Adjustments Position, and it was almost ten months after that, in December, 1995 that Stephens filed his first charge of discrimination. The remaining thirteen promotions were all made in a span of less than two years, between early 1996 and late 1997, which highlights the fact that the Urian and Greb promotions were more remote in time.

Looking at all of the facts surrounding these two positions, we disagree with the plaintiff that they could be seen to mark the beginning of a course of discrimination against

---

[4] In reviewing our previous opinion, we note that we made a slight error of fact on page 14, when we noted that Stephens had applied for nineteen promotions within Fleet. It is correct that by the time the parties briefed the motion for summary judgment, Stephens had dropped his claims regarding three promotions, but it is incorrect that he applied for all of the sixteen remaining jobs; as we explain above, no one applied for the two positions given to Greb and Urian in 1994.

[5] Stephens argues in his motion to reconsider that it was his second charge, filed in 1997, that more reasonably triggered his awareness that he might be the victim of discrimination, since it was the outcome of that investigation that led Stephens to file his lawsuit. And yet, although he mentions twelve different promotion denials in the second charge, including the 1995 Manager of Vehicle Adjustments position that was the subject of his first charge, he still fails to mention the 1994 promotions.

Stephens making it fair to allow him to include them in his complaint. Allowing him to do so would essentially give him free reign to point to any Shakman Exempt promotion made after he returned from his disability leave and contend that the City did not give the job to him because of his race. Stephens presented no evidence that the City was aware that he might have been interested in these jobs, especially since he had so recently returned from a five year hiatus from active employment. He cannot now point to random promotions made nearly eighteen months before he even filed a charge with the EEOC and contend that they represent part of an ongoing violation by the City.[6]

The fact that the two promotions at issue were made via a markedly different procedure than the rest of the promotion denials of which Stephens complains, coupled with the fact that they were remote in time only strengthens our reliance on the third *Selan* factor, that of Stephens' belief as early as December, 1995 that he was suffering from discrimination when the City failed to promote him. Thus, we uphold our decision to bar Stephens' section 1981 and 1983 claims with regard to these two promotions, on the ground that they occurred outside the statute of limitations.

2.     Stephens' EEOC Charge

Plaintiff also contends that the promotion denials involving Greb and Urian were properly included in Stephens' EEOC charges, and thus we should not have granted

---

[6] We do recognize that it is somewhat inconsistent that we allowed Stephens to reach back to the two 1994 promotions for the purposes of his Title VII claim, but did not allow him to do so for his section 1981 and 1983 claims. We allowed this inconsistency only because the 1994 promotions could be linked to a timely Title VII incident – the G. Santella promotion in March, 1995. However, that same promotion was untimely for section 1981 and 1983 purposes, so it could not be the "hook" for the two earlier promotions. And given that Stephens never complained about the two 1994 promotions in either of his charges before the EEOC, it was something of a stretch to even allow him to reach back for his Title VII claims. All of this is an academic discussion anyway, since we find that the two 1994 promotions are not fairly encompassed by the EEOC charge.

7

summary judgment for the City on Stephens' Title VII claim. In his motion, Stephens basically rehashes the original arguments from his brief, but to put the issue to rest, we will reiterate our findings. Although its true that we do not expect a layperson like Stephens to draft his EEOC charge as artfully as a lawyer might, Cheek v. Western and Southern Life Ins. Co., 31 F.3d 497, 502 (7th Cir. 1994), the charge still needs to be specific enough to put the employer on notice of what sorts of allegations it will be required to defend. Id. at 500. In this case, we find that the fact that all of Stephens' complaints relate to his failure to receive promotions is not enough.

By contending that the promotions of Urian and Greb are like or reasonably related to his later promotion denials – despite the fact that he never complained about them until he filed his complaint – Stephens is asking us to expand the scope of his EEOC charges to potentially include every non-posted promotion made within Fleet. In both of Stephens' charges, he names specific promotions he applied for and was denied, even providing dates. Nothing in the charges could be expected to fairly put the City on notice that he later planned to include two Shakman Exempt positions that had been filled months before any of the other events complained about took place and months before Stephens applied for his first promotion.[7] Thus, we properly excluded Stephens' Title VII claims regarding the 1994 promotions of Urian and Greb.

### 3. Prima Facie Standard for Urian and Greb Promotions

Since we have upheld our grant of summary judgment for the City with regard to the

---

[7] See, e.g., Saharkhiz v. Amr. Services Corp., No. 97 C 5868, 1998 WL 698943 (N.D.Ill., October 5, 1998) (Court found that time barred promotions excluded from plaintiff's EEOC charge complaining of a timely promotion denial were not like or reasonably related to the timely charge, and that further, the charge did not provide fair notice to defendant that it might be liable for incidents occurring outside the limitations period.)

8

Urian and Greb promotions on procedural grounds, it is not really necessary to examine whether Stephens can make a *prima facie* case of discrimination. However, because we did make an error in our explanation of a case discussing failure-to-promote claims, we will address the issue here. It is true that in our opinion, we referred to the *prima facie* case Stephens must make in order to demonstrate discrimination as requiring, at factor four, for him to show that the successful candidate for a promotion was less qualified than the plaintiff, when in fact, the correct standard requires a showing that the successful candidate was not better qualified.[8] *Johnson v. Nordstrom*, 260 F.3d 727, 732 (7th Cir. 2001). Plaintiff argues that because the City relied on Stephens' pay grade for denying him promotions, no facts were adduced regarding whether Urian and Greb were better qualified than Stephens, or whether Stephens was qualified at all.

We agree with the plaintiff that there was not a lot of evidence regarding Stephens' specific qualifications for the two 1994 promotions versus those of Greb and Urian. Although not specifically stated in our opinion, the evidence showed that the City presumed that an employee with a lower paygrade would have less experience (especially less management experience) than an employee with a higher pay grade, and thus it relied at least partially on pay grade to determine experience. Further, the City explained that it did not consider Stephens' qualified for the positions given to Urian and Greb not only because his pay grade was lower and did not include management experience, but because he had recently returned from a five-year hiatus from work at Fleet. For these same reasons, and

---

[8] The first three factors of the *prima facie* case require Stephens to show, 1) he was a member of a protected class; 2) he was qualified for the position sought; and 3) he failed to receive the position. *Johnson*, 260 F.3d at 732. As we explain, the City argues not only that Stephens fails to demonstrate that Urian and Greb were not more qualified than he was, but also that Stephens was not qualified at all for the promotions.

9

because both Urian and Greb held management positions at the time they were promoted, the City considered them more qualified than Stephens.

Shakman Exempt appointments do not require the creation of hiring packets, or consideration of specific criteria by members of the Department of Personnel ("DOP"). Thus, although we partially denied summary judgment for the City because it appeared the City did not follow its own procedures for filling some of the promotions for which Stephens applied, we do not come to the same conclusion here. Even assuming Stephens could make a *prima facie* case, there is no evidence that the City did not legitimately consider Urian and Greb to be more qualified than Stephens or that the City did not follow its procedures for filling a Shakman Exempt position. In fact, the evidence shows that the City never considered Stephens as a possible contender for these two jobs at all, given his very recent return from a five year leave. Thus, we uphold our granting of summary judgement for the City on the Urian and Greb appointments in 1994.

### B.     1995 Suspension by Urian

In 1995, Urian recommended that Stephens be suspended because he wrote to the Mayor of Chicago complaining about the promotion practices within Fleet. Neither Urian nor anyone else at the City could identify any rule Stephens violated by writing the Mayor. However, we granted summary judgment to Urian regarding this claim because Stephens did not file his lawsuit within two years of the suspension. Stephens now argues that the continuing violation doctrine should be applied to this event and that we incorrectly applied the *Selan* factors when we found the suspension to be untimely. However, for the same reasons as above, we will grant Stephens' motion to reconsider, but uphold our original decision that the statute of limitations bars Stephens' claim against Urian regarding the

10

suspension. As we explained, Stephens included the suspension in his December, 1995 charge at the EEOC, and thus we find it is not appropriate to reach back any further than that time for statute of limitations purposes.[9]

### C. Retaliation Claim

We deny plaintiff's motion to reconsider our decision granting summary judgment for the City on part of Stephens' retaliation claim. In his motion, Stephens merely disagrees with our analysis that the changes he allegedly suffered in his work assignment did not constitute an adverse employment action. As support for his claim, Stephens contends that his "complaint and EEOC charge described significant changes in his responsibilities." What Stephens fails to note is that he provided little evidence to support many of his contentions, as we mentioned in our original opinion. He has not pointed to a manifest error of law or fact with regard to this issue. Thus, we will not reconsider our original decision.

### D. Section 1983 - City

In asking that we reconsider our denial of his section 1983 claim against the City, Stephens again fails to identify an error of law or fact in our original opinion. Instead, he reiterates his old argument that the City's alleged failure to address his concerns about discrimination must demonstrate the existence of a widespread, unwritten policy of discrimination. However, Stephens does not explain how his dissatisfaction with the

---

[9] And consideration of the first two *Selan* factors does not change our analysis. The subject matter of this issue – a retaliatory suspension – is quite different from the other arguments Stephens makes about Urian, particularly that he failed to give Stephens promotions. And although the suspension was close in time to some of the promotion denials about which Stephens complains, this factor on its own is not enough for us to find a continuing violation.

response he received from some of his supervisors regarding his complaints of discrimination translate into institutional knowledge of actual wrongful conduct. For example, Stephens argues that the City's slow response in dealing with graffiti demonstrates culpability. However, the undisputed evidence shows that not only did the City always paint over the graffiti within a week, but that in some cases, Stephens himself may have caused any delay in the graffiti being covered. Further, plaintiff states in his brief that we found "that the City's widespread practice of failing to address Stephens' discrimination complaints was insufficient to establish culpability," implying that our original opinion found that the City did have a widespread practice of failing to address Stephens' complaints. This misstates our holding. What we actually held is that there was evidence that the City addressed Stephens' complaints, and the fact that he was not satisfied with the results is not enough to create knowledge of a widespread policy.[10] And Stephens' allegation that the City's unclear hiring and promotion practices are evidence of section 1983 liability is inappropriate at this stage, since he did not make such an allegation in his original response to the motion for summary judgment. *Moro*, 91 F.3d at 876. We deny Stephens' motion to reconsider our granting of summary judgment on his section 1983 claim because his arguments do not meet the standards for reconsideration.

E.  **Section 1981 and 1983 - Urian**

We deny Stephens' motion to reconsider our granting of summary judgment for Urian on these issues because Stephens does not point to an error of law or fact, as

---

[10] It is true that we denied the City's motion for summary judgment on parts of Stephens' retaliation claim, finding that its suspension of him after he questioned the City's promotion practices could be construed as linked. However, the fact that the City might be liable under Title VII for retaliation does not automatically mean that it had knowledge of a widespread policy of retaliation sufficient to create section 1983 culpability.

12

required for a motion to reconsider. Instead, Stephens rehashes the same arguments of his original brief, vaguely contending that Urian was directly responsible for failing to protect him against race discrimination because Stephens disagreed with the City's course of action in response to his complaints. Stephens' arguments are predicated on a misstatement of our original opinion; he alleges that we had already decided that there was "a question of fact about whether the City had an informal policy of ignoring complaints of harassment, and a question of fact of whether the supervisors had exercised enough authority to act on its behalf (sic) but chose not to." (Pl. brief at 8). However, this quote is actually referring to our explanation of a completely different case, *Donald v. City of Chicago*, No. 90 C 2360, 1992 WL 137190 (N.D.Ill., June 1, 1992); it does not set forth any questions of fact we found in Stephens' case. And as we explained in our original opinion, Stephens simply did not provide enough evidence to show that Urian was directly responsible for failing to protect Stephens from race discrimination.

We also decline to reconsider our decision to grant summary judgment to Urian on Stephens' allegations regarding his failure to receive promotions. In our original decision, we determined that Urian was not involved in the promotion process regarding Stephens; he never sat on an interview panel that considered Stephens and did not work with the DOP to choose who was placed on the interview lists.[11] Nothing in Stephens' brief

---

[11] Stephens argues that Urian's statement that "we've chosen the qualified applicants" implicates him in the decision making process for promotions. However, even making all inferences in Stephens' favor, the statement does not show that Urian was responsible for placing individuals on the interview lists, only that he had helped interview individuals who had been referred for an interview by the DOP. Further, his alleged statements to Figueroa that Stephens was not going to be promoted are inadmissible hearsay and cannot be used to prove that Urian had the authority to promote Stephens but declined to do so. Stephens also relies on inadmissible hearsay to try to link Urian to the promotion of an individual named Rudy Correa. The evidence shows that DOP employee Martin Gomez referred Correa for an interview. We do not accept
(continued...)

13

changes that assessment.

For the above reasons, we grant Stephens' motions to reconsider those parts of our opinions granting summary judgment for the City regarding Urian and Greb's promotions and for Urian regarding the 1995 suspension, but decline to change our decisions. We deny Stephens' motions to reconsider on all other grounds. It is so ordered.

ENTER:

MICHAEL T. MASON
United States Magistrate Judge

Dated: August 20, 2003

---

[11](...continued)
Stephens' hearsay statement that Figueroa told Stephens that Correa was Urian's choice.